UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KINSALE INSURANCE CO.                                CIVIL ACTION

VERSUS                                                        NO. 23-736

CD MANAGEMENT OF NEW                          SECTION "R" (5)
ORLEANS, INC. ET AL.


## ORDER AND REASONS

Before the Court are three motions: plaintiff Kinsale Insurance Company's ("Kinsale") motion for summary judgment[1] and motion to strike defendants' third-party demand,[2] and defendants' motion to defer ruling on Kinsale's summary judgment motion pending further discovery.[3]  For the following reasons, the Court hereby grants Kinsale's motion for summary judgment and motion to strike, and denies defendants' motion to defer ruling on summary judgment.


## I.   BACKGROUND

---

[1]      R. Doc. 9.
[2]      R. Doc. 27.
[3]      R. Doc. 14.

This case arises out of a fire that destroyed an office building owned by defendants CD Management of New Orleans, Inc. d/b/a Seabrook Harbor and Marine; Sea Brook Marine, LLC; and Seabrook Harbor, LLC (collectively, "Seabrook"). Seabrook's office building was insured against fire by a policy issued by Kinsale.[4] The policy included a "Protective Safeguards Endorsement" that provided as a "condition of th[e] insurance" that Seabrook must maintain, in complete working order, an automatic fire alarm that is either "[c]onnected to a central station" or "[r]eporting to a public or private fire alarm station."[5] In Seabrook's insurance application, Jeffrey Montz, the co-CEO and co-owner of Seabrook, represented that Seabrook had a centrally monitored, automatic fire alarm in its office.[6] Nevertheless, at the time that Seabrook's office caught fire on November 13, 2022, Seabrook did not maintain such an alarm in the building.[7]

Seabrook submitted a claim to Kinsale for losses arising from the fire, which Kinsale denied on the grounds that Seabrook failed to meet the requirements of the Protective Safeguards Endorsement.[8] Kinsale then filed

---

[4]   R. Doc. 1 ¶ 10.

[5]   *Id.* ¶ 11.

[6]   *Id.* ¶ 9.

[7]   *Id.* ¶ 13. The fire also caused damage to other property owned by Seabrook. *Id.* ¶ 3.

[8]   *Id.* ¶ 14.

a complaint in this Court seeking a declaratory judgment that Kinsale had no obligation to provide coverage for losses occurring as a result of the fire, either because Seabrook failed to satisfy a condition precedent of the policy, or because the policy excludes coverage for Seabrook's claim.[9]

Kinsale now moves for summary judgment on its declaratory judgment claim.[10]  In support of its motion, Kinsale relies on an affidavit in which Montz admits that Seabrook did not comply with the Protective Safeguards Endorsement.[11]  In opposition, Seabrook acknowledges that it did not meet the requirements of the Protective Safeguards Endorsement,[12] but contends that Kinsale's denial of coverage was nonetheless wrongful because (1) Seabrook believed, in good faith, that it had a centrally monitored, automatic fire alarm, and (2) Seabrook did not intend to deceive Kinsale regarding the status of Seabrook's fire alarm.  Seabrook asks the Court to defer ruling on Kinsale's motion for summary judgment pending further discovery on the issue of Seabrook's good-faith belief that it complied with the terms of the policy.[13]

---

[9]    *Id.* ¶¶ 18-19.
[10]   R. Doc. 9.
[11]   R. Doc. 9-8 ¶ 29.
[12]   R. Doc. 19 at 7.
[13]   R. Doc. 14.

After Kinsale moved for summary judgment, Seabrook filed counterclaims against Kinsale for breach of contract and bad faith denial of coverage under Louisiana Revised Statutes §§ 22:1973 and 22:1892.[14] Seabrook also brought third-party claims against third-party defendants Central Monitoring, Inc. d/b/a Alarm Protection Services, Inc. ("Central Monitoring"); Victor Arroyo, general manager of Central Monitoring; and ABC Insurance Company, alleged insurer of Central Monitoring and Victor Arroyo.[15]  In its third-party complaint, Seabrook contends that it contracted with third-party defendants to bring Seabrook into compliance with the policy's safety requirements.  Third-party defendants allegedly replaced Seabrook's alarm system and misrepresented to Seabrook that the new system fulfilled Seabrook's insurance requirements when, in reality, the alarm system did not include an automatic fire alarm that was connected to a central station or a public or private fire alarm station.[16]  Seabrook thus asserts that third-party defendants are liable for, among other things, negligence and breach of contract.[17]

---

[14]     R. Doc. 16 at 25-30.
[15]     *Id.* at 36-37.
[16]     *Id.* at 38-39.
[17]     *Id.* at 40.

4

Kinsale now moves to strike Seabrook's third-party complaint on the grounds that the claims against third-party defendants are not derivative of Kinsale's declaratory judgment action, that the claims are meritless, and that adjudication of the third-party claims would undermine judicial economy and needlessly complicate this case.[18]  Seabrook opposes Kinsale's motion to strike.[19]

The Court considers the parties' motions below.

## II.   SUMMARY JUDGMENT

### A.   Kinsale's Motion for Summary Judgment

#### 1.   *Legal Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or

---

[18]   R. Doc. 27.

[19]   R. Doc. 28.

weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

###### 2. *Discussion*

Sitting in diversity, the Court applies the substantive law of the forum state. *Scottsdale Ins. Co. v. Logansport Gaming, L.L.C.*, 556 F. App'x 356, 359 (5th Cir. 2014). Under Louisiana law, an insurance policy, like any other

contract, is construed according to the general rules of contract interpretation set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).  Contracts are interpreted to determine "the common intent of the parties." *Id.* (citing La. Civ. Code Ann. art. 2045).  "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* (citing La. Civ. Code Ann. art. 2047).  An insurance policy "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* A court cannot exercise "inventive powers to create an ambiguity where none exists" or "mak[e] a new contract when the terms express with sufficient clearness the parties' intent." *Id.*  Accordingly, clear and unambiguous policy wording that expresses the parties' intent is enforced as written. *Id.*

Conversely, "equivocal provisions seeking to narrow an insurer's obligation" are strictly construed against the insurer and in favor of coverage. *Id.*  The strict construction principle applies only if the ambiguous policy provision is susceptible to more than one reasonable interpretation. *Id.*  "The determination of whether a contract is clear or ambiguous is a question of

law." *Id.* While the insured has the burden of proving that the circumstances constitute a covered claim—including that all conditions precedent have been satisfied—the insurer has the burden of proving that an exclusion applies. *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000); *see also Scherer v. Chiasson*, 469 So. 2d 510, 514 (La. App. 3 Cir. 1985).

In this case, the Protective Safeguards Endorsement clearly provides that Seabrook's maintenance of a centrally monitored, automatic fire alarm is a condition precedent to coverage. Although the policy does not use the words "condition precedent," it provides that Seabrook's maintenance of such an alarm is "a condition of this insurance." *See Bridgefield Cas. Ins. Co. v. River Oaks Mgmt., Inc.*, 590 F. App'x 308, 313 (5th Cir. 2014) (treating insurance policy provision as a condition precedent even though "the exact phrase 'condition precedent' is not used," because the policy "plainly states" that coverage would not be afforded unless the provision is met). Further, the provision in the policy that states that Kinsale "will not pay for loss or damage caused by or resulting from fire if, prior to the fire, [Seabrook] failed to comply with any condition set forth in" the Protective Safeguards Endorsement[20] is an exclusion. Federal courts "applying Louisiana law while sitting in diversity have concluded [that] nearly identical protective

---

[20]    R. Doc. 1 at 4.

safeguards endorsements contain both conditions precedent *and* exclusions." *Versai Mgmt. Corp. v. Landmark Am. Ins. Corp.*, No. 11-290, 2013 WL 681900, at *4 (E.D. La. Feb. 22, 2013) (emphasis in original) (collecting cases).

Accordingly, Seabrook "has the burden to put forward the facts showing that it satisfied the conditions precedent and, as a result, that its losses are covered." *Id.* Here, it is undisputed that Seabrook did not satisfy the condition precedent.[21] Seabrook contends that Kinsale nevertheless should provide coverage because Seabrook believed in good faith that it had a centrally monitored, automatic fire alarm that complied with the Protective Safeguards Endorsement. Seabrook further contends that it did not intend to deceive Kinsale by representing that it had a centrally monitored, automatic fire alarm on its insurance application. Seabrook thus asserts that summary judgment is improper because there are genuine issues of material fact as to Seabrook's belief regarding whether it complied with the terms of the policy and as to whether Seabrook intended to deceive Kinsale in Seabrook's insurance application. The cases and statutes that Seabrook relies on in favor of these arguments do not support Seabrook's position.

---

[21]    R. Doc. 19 at 13.

First, Seabrook relies on Louisiana Revised Statute § 22:1314, which

provides:

> No policy of fire insurance issued by any insurer on property in this state shall hereafter be declared void by the insurer for breach of any representation, warranty, or condition contained in such policy or in the application therefor. Such breach shall not allow the insurer to avoid liability unless such breach . . . exists at the time of the loss, and be such a breach as would increase either the moral or physical hazard under the policy.

La. Rev. Stat. § 22:1314(A). Federal courts interpreting Louisiana law have

applied this statute to conclude that when a condition precedent in a fire

insurance policy is not met, the insurer still "must prove still that the breach

of the[] condition[] increased the physical hazard under the policy." *Versai*

*Mgmt. Corp.*, 2013 WL 681900, at *4.

As a threshold matter, Kinsale argues that this statute has no

application here because Kinsale did not declare the whole policy void;

rather, it determined that Seabrook's claim was not covered under the terms

of the policy. Even if Louisiana Revised Statute § 22:1314 applies to cases in

which an insurer simply denies coverage, rather than declaring a policy void,

the statute does not help Seabrook. There can be little doubt that failure to

maintain a centrally monitored, automatic fire alarm increased the physical

hazard under the policy, as the absence of a working fire alarm

unquestionably results in "an increase in the potential for the insured peril

by [the] change in the physical circumstances surrounding the insured property." *Gwin v. Liberty Mut. Ins. Co.*, No. 16-1222, 2017 WL 3574443, at *6 (M.D. La. Aug. 17, 2017) (citing 15 LA. CIV. L. TREATISE, INS. L. & PRAC. § 10:330). Seabrook maintains that due to the nature of the fire and the location of the fire alarm, the buildings would have sustained damage even if Seabrook had complied with the condition precedent.[22] But there is no requirement "that there must be a specific link between the hazard and the loss itself." *Id.*

Seabrook next asserts that Kinsale waived its right to deny coverage under Louisiana Revised Statute § 22:1314(B). That section provides, in relevant part:

> Notwithstanding the provisions of Subsection A of this Section, such a breach shall not afford a defense to a suit on the policy if the facts constituting such a breach existing at the time of the issuance of the policy and were, at such time, known to the insurer or to any of his or its officers or agents, or if the facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents.

*Id.* Seabrook asserts that it believes Kinsale inspected the property before the fire occurred,[23] and knew or should have known that Seabrook did not have a centrally monitored, automatic fire alarm. Alternatively, Seabrook

---

[22]   R. Doc. 19 at 8.

[23]   Seabrook cites nothing in support of this proposition.

asserts that even if Kinsale did not inspect the property, it had the opportunity to do so.[24]  Seabrook thus concludes that Kinsale waived its right to deny coverage based on Seabrook's failure to meet the Protective Safeguards Endorsement.  But these bald assertions are not enough to amount to waiver under Louisiana Revised Statute § 22:1314(B).

Under Louisiana law, waiver "is the intentional relinquishment of a known right, power or privilege, which occurs when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Zydeco's II, L.L.C. v. Certain Underwriters at Lloyd's, London*, 356 So. 3d 345, 376 (La. App. 5 Cir. 2021) (assessing waiver under Louisiana Revised Statute § 22:1314(B)).  Waiver "may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right . . . to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered." *Id.* (internal quotation marks omitted).  The burden of proving waiver "generally falls on the party who demands performance," and the proof of knowing and voluntarily relinquishment must be "reliable."  *Id.* "Notice of facts which would cause a reasonable person to inquire further

---

[24]    R. Doc. 19 at 13.

imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered." *Id.*

Here, Kinsale has submitted a sworn declaration from Connor Thompson, claims counsel for Kinsale, that confirms that Kinsale did not inspect Seabrook's premises.[25]  Seabrook's bare assertion that it believes that Kinsale inspected the property is not sufficient to create an issue of fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (a party cannot create an issue of fact "with some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence" (internal quotation marks omitted)).  Nor does Seabrook's unsupported assertion that Kinsale had the opportunity to inspect the property give rise to waiver, as a duty to investigate is triggered only by "[n]otice of facts which would cause a reasonable person to inquire further." *Zydeco II*, 356 So. 3d at 376.  Here, Seabrook has not raised a fact issue as to whether Kinsale had notice of Seabrook's noncompliance with the Protective Safeguards Endorsement that triggered a duty to investigate, or as to whether Kinsale was "reasonably aware of a defense to coverage and continue[d] to renew the policy with no notice to the insured." *Id.* (internal

---

[25]     R. Doc. 25-1.

quotation marks omitted). To the contrary, Seabrook acknowledges that it represented in its insurance application that it had a centrally monitored, automatic fire alarm. This case thus bears little resemblance to *Zydeco II*, the case on which Seabrook heavily relies in opposition to Kinsale's motion. 356 So. 3d at 376. In that case, the court found that the insurer waived its right to deny coverage under Louisiana Revised Statute § 22:1314 because it instructed an insurance broker to conduct multiple inspections of the property with "specific instructions to verify the presence of a centrally monitored fire alarm on the premises." *Id.* at 376-77. In this case, Seabrook has not created a fact issue as to whether such an inspection occurred.

Nor is Kinsale estopped from enforcing the plain terms of the insurance policy. As a general matter, "estoppel is not favored in Louisiana law and such claims must be examined carefully and strictly." *L.T. v. Chandler*, 917 So. 2d 753, 758 (La. App. 2 Cir. 2005). The "rarely applied" doctrine "may be appropriate if three elements are established: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance or representation." *Id.* Here, Seabrook has not pointed to anything that Kinsale said or did to suggest to Seabrook that Kinsale did not intend to enforce the terms of the Protective Safeguards Endorsement. *See id.* (rejecting claim

that insurer was estopped from denying coverage because insured did not establish that insurer "made representations to the plaintiffs that all the claims asserted . . . were covered" under the policy).

Next, Seabrook relies on Louisiana Revised Statute § 22:860, which provides that insurers can establish an affirmative defense to coverage by showing that the insured made a materially false statement in the insurance application with the intent to deceive. La. Rev. Stat. § 22:860(A). Seabrook contends that its misrepresentation regarding the presence of a centrally monitored, automatic fire alarm was not material, and that it did not make the misrepresentation with an intent to deceive.[26] But here, Kinsale does not seek to establish an affirmative defense to an insurance claim that would otherwise be covered. Rather, Seabrook's claim is not covered because the condition precedent was not met. This statute thus has no application.

Seabrook also contends that it would have sustained the same amount of property damage regardless of whether it had a centrally monitored, automatic fire alarm.[27] The Court "need not resolve whether the [fire] alarm would have been effective in" reducing Seabrook's damages "because the parties themselves agreed, as a matter of contract, that having such an alarm

---

[26]   R. Doc. 19 at 9.

[27]   *Id.* at 8.

was a condition precedent to coverage under the policy." *Harvey Sweet Shop & Seafood, L.L.C. v. Western World Ins. Co.*, 2021 WL 3471158, at *3 (E.D. La. Aug. 6, 2021).

To the extent that Seabrook contends that the policy required Seabrook only to *attempt* to maintain a centrally monitored, automatic fire alarm, and that it satisfied that requirement by contracting with Central Monitoring, that argument is foreclosed by Fifth Circuit precedent.   In *Scottsdale Insurance Co. v. Logansport Gaming, L.L.C.*, the Fifth Circuit considered a similar insurance policy provision that required the insured to maintain a fire suppression system "in complete working order" throughout the term of the insurance policy.  556 F. App'x 356, 358 (5th Cir. 2014).  The insured contracted with a third party to service and inspect its fire suppression system semi-annually.  *Id.*  After the insured's property was damaged by a fire, the insurer conducted an investigation and concluded that the insured failed to maintain its fire suppression system in complete working order.  *Id.* The insurer thus denied coverage.  *Id.*

The insurer filed suit in federal court seeking a declaratory judgment that the policy did not cover the insured's damages arising from the fire.  *Id.* The district court ruled in favor of the insurer at summary judgment, and the insured appealed, arguing that "due diligence" was the proper standard for

17

determining its compliance with the policy. The insured asserted that it satisfied that standard by hiring a third-party contractor to service and inspect its fire suppression system. *Id.* at 359. In affirming the judgment of the district court, the Fifth Circuit observed that "[n]othing in the plain language of the policy suggests that to maintain the protective safeguards in complete working order means only to exercise due diligence in maintaining the safeguards listed." *Id.* The Fifth Circuit emphasized that "[t]he phrase 'in complete working order' is crucial," because it "leaves no doubt that diligence alone is not enough to satisfy the plain terms" of the insurance policy. *Id.* Because the insured conceded that the fire suppression system was not working at the time of the fire, the Fifth Circuit held that the insurer was entitled to summary judgment. *Id.* at 359-60.

The same is true here. The insurance policy does not require Seabrook merely to attempt to maintain a centrally monitored, automatic fire alarm. Rather, the policy requires Seabrook to maintain such an alarm "in complete working order," and, like the insured in *Logansport*, Seabrook concedes that it did not do so. Accordingly, Kinsale is entitled to summary judgment without regard to whether Seabrook contracted with Central Monitoring to install such a fire alarm, or whether Central Monitoring negligently failed to provide one.

18

**B.    Seabrook's Rule 56(d) Motion for Further Discovery**

Because none of the arguments Seabrook raises in opposition to Kinsale's motion, if true, would change the Court's conclusion as to whether Seabrook's claim is covered under the plain terms of the policy, Seabrook is not entitled to more discovery before summary judgment.   Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery or (3) issue any other appropriate order.

Critically, Rule 56 "does not require that any discovery take place before summary judgment can be granted." *Dreyer v. Yelverton*, 291 F. App'x 571, 577 (5th Cir. 2008) (internal quotation marks omitted).  "The Rule 56(d) movant must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (internal quotation marks omitted).  Here, Seabrook has not shown that the discovery it seeks—regarding its good-faith belief that it complied with the policy by hiring Central Monitoring, and

whether it intended to deceive Kinsale by misrepresenting that it had a centrally monitored, automatic fire alarm in its insurance application— would "influence the outcome of the pending summary judgment motion." *See id.* The Court thus denies Seabrook's Rule 56(d) motion.

## III.   MOTION TO STRIKE

### A.   Legal Standard

A motion to strike, sever, or try separately a third-party claim requires a determination of whether the third-party claim is proper under Rule 14 of the Federal Rules of Civil Procedure. Rule 14(a) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). Accordingly, liability of the third party must be "dependent" or "in some way derivative" of the outcome of the main claim. *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 750-52 (5th Cir. 1967); *see also Hassan v. La. Dep't of Transp. & Dev.*, 190 F.3d 538, 1999 WL 642861, at *2 (5th Cir. 1999) (holding that Rule 14(a) "exists to bring in third parties who are *derivatively* liable to the impleading party" (emphasis in original)). In other words, the third-party defendant "must necessarily be *liable over* to the defendant for all or part of the plaintiff's recovery, or . . .

the defendant must attempt to *pass on* to the third party all or part of the liability asserted against the defendant." *Id.* at 751 (emphasis added).

If a third-party complaint meets the requirements of Rule 14, the Court has wide discretion in determining whether to allow the filing. *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 184 (5th Cir. 1984). District courts consider a number of factors in exercising this discretion, including:

> [E]ffectuating the purposes of Rule 14 (avoiding circuity of action, eliminating duplication of suits on closely related matters and promoting judicial economy); whether other parties will be prejudiced; the unreasonableness of delay by the party asserting the third-party complaint; lack of substance to the third-party claim; and whether the action will become unduly complex or unduly delayed by permitting the impleader.

*Marquette v. S. Fid. Ins. Co.*, No. 14-2311, 2015 WL 5083617, at *2 (E.D. La. Aug. 26, 2015); *see also Cedar Ridge, L.L.C. v. Landmark Am. Ins. Co.*, No. 13-672, 2013 WL 4854388, at *2 (E.D. La. Sept. 10, 2013).

## B.    Discussion

Seabrook's third-party claims are permissible only if they are within the scope of impleader established by Rule 14(a), which "requires that the liability of the third party be dependent upon the outcome of the main claim." *Joe Grasso & Son*, 380 F.2d at 751. Federal courts take differing approaches on how this rule applies in the context of a declaratory judgment action, in

which the third party cannot be "liable over to the defendant for all or part of the plaintiff's recovery," *id.*, because the plaintiff does not seek to recover money damages. *See Navigators Ins. Co. v. Univ. Louisville Found.*, 329 F.R.D. 557, 561 (W.D. Ky. 2019) (collecting cases).

Some federal courts have concluded that impleader is improper in declaratory judgment actions because the plaintiffs in such cases do not seek to hold the defendants liable. *Id.*; *see also 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.*, No. 15-4516, 2016 WL 5372804, at *4-6 (E.D.N.Y. Sept. 26, 2016). In the context of declaratory judgment actions filed by insurers, in particular, courts have concluded that Rule 14 impleader is not appropriate "where the third-party claims would not meaningfully impact the coverage question in the underlying declaratory judgment action." *Navigators Ins. Co.*, 329 F.R.D. at 562. In those cases, the courts conclude that a third-party claim is not "contingent" on the outcome of the main claim for purposes of Rule 14 "simply because the third-party plaintiff would only seek recovery from the third-party defendant if the underlying plaintiff prevails on its declaratory judgment action." *Id.* at 561. Other courts take a more flexible approach to the requirements of Rule 14, permitting impleader in declaratory judgment actions when the facts of the underlying case are

22

closely intertwined with the facts of the third-party claims. *See, e.g.*, *Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566, 568-70 (S.D.N.Y. 1983).

The Fifth Circuit has not clearly endorsed either approach. When articulating the standard for impleader, the Fifth Circuit has made clear that Rule 14(a) "exists to bring in third parties who are *derivatively* liable to the impleading party." *Hassan*, 190 F.3d at *2 (emphasis in original). In other words, impleader "is only proper if . . . the impleaded party is or may be liable for part of the claim against [the original defendant]." *Mitchell v. Hood*, 614 F. App'x 137, 140 (5th Cir. 2015) (noting that impleader "is *not* permitted because a third party may be liable to the original defendant for some other, independent reason" (emphasis in original)). Nevertheless, in a 1956 decision, the Fifth Circuit held that the district court did not abuse its discretion in permitting a third-party complaint in a declaratory judgment action, not because the third party was "liable over to the defendant for all or part of" the plaintiff's recovery, *Joe Grasso & Sons*, 380 F.2d at 751, but because the issues underlying both the declaratory judgment claim and the third-party claims "turn[ed] on substantially the same facts" and "were so closely intertwined that consistent results probably depended upon their being decided at one time." *Am. Fidelity & Cas. Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956).

23

Regardless of which standard applies to impleader in the context of declaratory judgment actions, Seabrook's third-party complaint must be stricken. There can be little doubt that Seabrook's claim is not derivative of, or contingent upon, the primary claim in this case—in other words, third-party defendants are not "liable to [Seabrook] for all or part of [Kinsale's] claim against it." Fed. R. Civ. P. 14(a)(1). And unlike in *American Fidelity and Casualty Co. v. Greyhound Corp.*, Kinsale's declaratory judgment claim—a straightforward question of law—does not turn on "substantially the same facts" as Seabrook's third-party claims, nor do consistent results depend on the two claims being decided simultaneously. 232 F.2d 92. To the contrary, the question of whether Seabrook's insurance claim is covered under the plain terms of the policy is wholly distinct from the question of whether third-party defendants acted negligently or breached their contract with Seabrook by failing to install a centrally monitored, automatic fire alarm. *Hanover*, 316 F.R.D. at 186 (striking third-party complaint when the "evidence required to prove [plaintiff's] claim against [defendant] and the evidence required to prove [defendant's] third-party claim against [third-party defendant] are distinct"). Seabrook asserts that the claims are sufficiently related because third-party defendants' alleged wrongdoing is the reason Seabrook did not comply with the Protective Safeguards

24

Endorsement, but the Fifth Circuit has rejected the argument that impleader is proper simply because there is a "but-for" relationship between the claims. *Southeast Mortg. Co. v. Mullins*, 514 F.2d 747, 750 (5th Cir. 1975) ("The suggestion that a separate and independent claim can be made the proper subject of a third-party complaint because, but for the violation of the duty alleged[,] the main claim would not have matured, has been rejected by this and other courts."). Further, "an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim." *Joe Grasso & Sons*, 380 F.2d at 751. Although Seabrook may not choose to continue pursuing its claims against third-party defendants unless Kinsale prevails in the declaratory judgment action, "[t]he result in one analysis will not affect the result in the other." *Hanover*, 316 F.R.D. at 186.

Nor would impleader support the aims of Rule 14, including the promotion of efficiency and the reduction of litigation. *Id.* at 183. Indeed, Seabrook has already filed claims in state court against third-party defendants based on the same alleged misconduct that forms the basis of Seabrook's third-party claims in this case.[28] Permitting duplicative claims to advance in this Court, despite their lack of connection with this declaratory

---

[28]   R. Doc. 27-1 at 2.

judgment action, undermines judicial efficiency.  Further, permitting the third-party claims to proceed in this case, which would require resolution of third-party defendant's pending motion to dismiss and potentially discovery related to the third-party claims, would unduly delay resolution of this matter.  *See Bell v. Bolivar Cnty.*, 24 F.3d 240, 1994 WL 243455, at *2 (5th Cir. 1994) (affirming district court's dismissal of third-party complaint because the filing would prejudice the plaintiff by delaying the case, whereas the defendant would not face prejudice because it could file its claims against the third party in a separate proceeding).

The Court thus grants Kinsale's motion to strike the third-party claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Kinsale's motion for summary judgment[29] and motion to strike Seabrook's third-party complaint.[30]  The Court DENIES Seabrook's Rule 56(d) motion for further discovery.[31]

New Orleans, Louisiana, this ___12th___ day of June, 2023.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[29]    R. Doc. 9.
[30]    R. Doc. 27.
[31]    R. Doc. 14.